UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DR. MICHAEL JOHNSON, D.C. and<br>MICHELE JOHNSON (husband and wife)<br>7823 Lakeshore Lane<br>Sherwood, Wisconsin 54915<br><br>APPLE MEDICAL CENTER, S.C.,<br>1713 S. Oneida Street<br>Appleton, Wisconsin 54915<br><br>    Plaintiffs,<br>vs.<br><br>MARY SHOMAN,<br>4402 Woodfield Road,<br>Kensington, Maryland 20895 | Case No. 4:13-CV-01142<br>**Jury Trial Demanded**<br><br>COMPLAINT FOR RELIEF<br>ARISING OUT OF DEFAMATION<br>OF CHARACTER AND<br>COPYRIGHT INFRINGEMENT |

## PARTIES

1) Dr. Michael Johnson is a chiropractor practicing in the state of Wisconsin. Dr. Johnson, along with his wife, Mrs. Michele Johnson, are currently domiciled at 7823 Lakeshore Lane Sherwood, Wisconsin 54169.

2) Apple Medical Center, S.C. is Dr. Johnson's chiropractic practice and it is located at 1713 S. Oneida Street in Appleton, Wisconsin, 54915.

3) Ms. Mary Shomon is currently domiciled at 4402 Woodfield Road, Kensington, Maryland 20895.

## JURISDICTION & VENUE

4) Federal diversity jurisdiction exists pursuant to 28 U.S.C. §1332 because the Plaintiffs' are residents of a different state from the defendant and because the value of the matter in controversy exceeds $75,000.

5) Venue in this district is proper pursuant to 28 U.S.C. §1391 because Plaintiffs' financial and accounting records are located in the county of St. Louis County, Missouri which falls under the jurisdiction of the Eastern District of Missouri.

## FACTS

6) Dr. Michael Johnson is a Doctor of Chiropractic Medicine. Dr. Johnson operates and runs his practice out of Apple Medical Clinic, S.C. (hereinafter referred to as the "Clinic") located in Appleton, Wisconsin. Along with providing chiropractic services, the Clinic has been engaged in marketing services for other chiropractors nationally for compensation.

7) Dr. Johnson uses a radically different, and to some controversial, but extremely effective clinical regimen to treat patients with chronic and severe conditions including fibromyalgia and thyroid disorders. After finding extraordinary patient results with the therapies and clinical protocols, Dr. Johnson developed a business and marketing Method for this clinical regimen which he then began marketing to other chiropractors via the internet.

8) Dr. Johnson began marketing a business Method called "The Johnson Method (2.0) with Dr. Michael Johnson" (the "Method") where other Chiropractors can pay a monthly fee and the Method will set up condition specific websites and internet ads. The Method uses proprietary software to track ads on web pages using Facebook and Google Adwords to attract more potential patients.

9) Dr. Johnson began an internet site to market his Method to other chiropractors. On his internet site he offers a free report detailing his Method.

10) The Defendant has never personally met Dr. Johnson and was never a patient of Dr.

11) Johnson. The Defendant represents that she suffers from a thyroid disorder; however she has never tried the clinical regimen offered by Dr. Johnson.

12) The Defendant represents herself to the public on the internet as a patient advocate for other thyroid patients; however, she does not have a degree or a formal educational background in medicine. The Defendant publishes articles on About.com giving her opinion on treatments for thyroid disease.

13) Upon information and belief, About.com is an internet site which gives original information and/or advice to patrons about a variety of topics. Each article is written by a "guide" who on information and belief is compensated for their articles. Guides are given a bonus depending on the number of people viewing their article.

## FIRST CLAIM FOR RELIEF

### (Libel per se)

14) A statement is defamatory if it "tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her." *Torgerson v. Journal/Sentinel, Inc.*, 563 N.W.2d 472 (1997).

15) Libel per se is a tort actionable without proof of damages because damages are presumed from the character of the defamatory language. *Martin*, 15 Wis. 2d at 459.

16) Libel per se is limited to four circumstances including defamation "affecting one in his business, trade, profession or office." *Id.*

17) The Defendant has intentionally written many false statements which were intended to and have been harmful to Dr. Johnson's practice and professional reputation.

18) The Defendant has also manipulated statements made by Dr. Johnson and posed them as quotes stated by Dr. Johnson on Facebook and About.com in order to cause harm to his professional career, to lower him in the estimation of the community and to deter third persons from associating or dealing with him.

19) The Defendant's statement was defamatory because at no time did Dr. Johnson say that selling thyroid patients $10,000-$15,000 testing and/or nutritional programs was "like shooting fish in a barrel."

20) This statement was intended to portray Dr. Johnson as insensitive to the plights of his patients and scheming.

21) The purpose of this statement was to deter third persons, patients, potential patients, or potential clients, from associating or dealing with Dr. Johnson.

22) Dr. Johnson, on his website for the Method, stated:

*I market and promote my practice differently than other doctors by using the internet. Granted, we also have tons of newspaper ads, TV ads, power point presentations for lectures and flyers available too! (And I enjoy an EXTRAORDINARY level of referrals. You will too. When you get patients better that NO ONE else could get better, they refer others!)*

*IN ADDITION, we have developed a brand new Facebook and Google Adwords program. Using PROPRIETARY software, we can track ads on Facebook and Google Adwords when the click through ratio (CTR) gets below a certain level. These internet programs are all TURN-KEY meaning that we set up the condition specific websites for you, use our thoroughly split-tested internet ads and all you do is schedule the patients! THESE INTERNET PROGRAMS ARE LITERALLY LIKE SHOOTING FISH IN A BARREL!!*

23) In the Defendant's article on About.com the Defendant quotes Dr. Johnson:

*Johnson also says: 'I have a COMPLETE SYSTEM for attracting exactly these chronic condition patients into your office. I market and promote my practice differently than other doctors using the internet…These internet programs are all TURN-KEY meaning that we set up the condition specific websites for you, use our thoroughly split-tested internet ads and all you do is schedule the patients!'*

24) The Defendant redacted portions of this quote in order to change the tone of Dr. ohnson's message.

25) The way the Defendant "quoted" Dr. Johnson does not reflect Dr. Johnson's original intent of the statement nor Dr. Johnson's actual language.

26) This statement was intended to portray Dr. Johnson as insensitive to the plights of his

patients and scheming.

27) The Defendant says multiple times throughout her postings on Facebook about Dr. Johnson that she is just trying to "warn" thyroid patients. Therefore, the purpose of this statement was to deter or "warn" third persons, patients or potential patients, from associating or dealing with Dr. Johnson.

28) Another of the Defendant's Facebook posts stated: "A tidbit: chiropractor and Internet marketing fatcat Michael Johnson has had charges filed against him for violating the Telephone Consumer Protection Act (TCPA)." This statement is completely false.

29) Dr. Johnson never had charges filed against him for violating the Telephone Consumer Protection Act (TCPA).

30) The Defendant published these false charges to third parties through Facebook to intentionally cause damage to Dr. Johnson's professional reputation and to deter third persons from associating or dealing with Dr. Johnson.

31) Webster's Dictionary defines "fatcat" as "any wealthy person, especially one who has become rich quickly through questionable dealings."

32) The Defendant has no basis for calling Dr. Johnson an "Internet marketing fatcat" for the following reasons:

    a. The Defendant has absolutely no basis for claiming Dr. Johnson to be a wealthy person nor how fast he became wealthy;

    b. Dr. Johnson's dealings are not questionable; they are ethical and legal treatments that have had successful results on his patients; and

    c. If Dr. Johnson has made money, it is due to his clinical regimen not his internet marketing skills.

33) By calling Dr. Johnson an "Internet Marketing fatcat", the Defendant was intentionally trying to damage Dr. Johnson's reputation as being a sly, questionable doctor being more concerned with internet marketing than his patients.

34) On the Defendant's Facebook page, the Defendant said "Johnson is an Internet marketer…he may be a chiropractor, but that is really secondary." This statement is completely false.

35) Dr. Johnson is a chiropractor first and foremost who has had success with his controversial clinical regimen and he is sharing it with other chiropractors via the internet.

36) The Defendant's statement was defamatory as it was false and made with the intent to deter third persons from associating or dealing with Dr. Johnson.

37) In referring to Dr. Johnson on her Facebook page, the Defendant states "There are wonderful chiropractors out there who do the right thing by their patients. And then there are some who prey on chronically ill patients, sadly."

38) Dr. Johnson does not "prey" on chronically ill patients. This statement is false and its intent was to cause harm to Dr. Johnson's professional reputation and to deter third persons from associating or dealing with Dr. Johnson.

39) In referring to Dr. Johnson's website which markets the Method, the Defendant states that "[t]his has a lot in common with late night infomercials, those required marketing presentations at the free timeshare weekend, multi-level marketing, or the time you spend sitting in the used car salesman's office." This statement is false.

40) Late night infomercials, free timeshare weekends, multi-level marketing and used cars salesmen are all marketing schemes which carry a negative connotation and are stereotypically manipulative.

41) Dr. Johnson's Method has nothing in common with late night infomercials, free timeshare weekends, multi-level marketing or used cars salesmen. The Defendant associated Dr. Johnson's practice and Method with these stereotypically negative marketing schemes in order to harm Dr. Johnson's reputation so as to lower him in the estimation of the community in order to deter third persons from associating or dealing with him.

42) In referring again to Dr. Johnson's website and his chiropractic practice on Facebook, the Defendant says "Man's definitely worried about protecting his $160,000 a month income and telling chiropractors how to 'shoot fish in a barrel (fish=thyroid patients) by charging thyroid patients $10-$15,000 to tell them how to take vitamins." This is false for the following reasons:

    a. Dr. Johnson's website says "These internet programs are all TURN-KEY meaning that we set up the condition specific websites for you, use our thoroughly split-tested internet ads and all you do is schedule the patients! THESE INTERNET PROGRAMS ARE LITERALLY LIKE SHOOTING FISH IN A BARREL!!"

    b. Dr. Johnson is referring to how easily it is to attract new patients to your practice when you use his Method it did not state anything about the vulnerability of the patients themselves.

    c. Dr. Johnson is not specifically referring to thyroid patients in any way but specifically chronically ill patients who have seen great results from his clinical regimen.

    d. The Defendant falsely represents that Dr. Johnson's practice merely distributes vitamins and Dr. Johnson's chiropractic regimen is much more than dolling out vitamins. Dr. Johnson describes the regimen on his website in the following way:

> *This features oxygen, glutathione, neurological, and nutritional therapies. For those who don't know, glutathione is the high-potency, high-powered antioxidant-based therapy.. Glutathione therapy provided by chiropractors as I do it in my practice is legal in every state since it is an anti-oxidant (application varies). Oxygen therapy is legal in 27 states. (No biggie if it isn't allowed in your state, you can still treat the patient metabolically/nutritionally.) Nutritional therapy is based on specific metabolic lab testing (aka. Functional Medicine). Neurological treatments are legal in all states.*

 *e.* Dr. Johnson does not charge $10-$15,000 for every patient and not even most patient. Dr. Johnson's Method states that "[m]any doctors are getting 15 to 20 new patients from our internet programs alone. At $7500.00 to $10,000 per case…" The Defendant manipulated Dr. Johnson's statement and falsely restated it to the world via Facebook. The Defendant made this statement to portray the false impression that patients are merely cash to Dr. Johnson in order to harm Dr. Johnson's reputation so as to lower him in the estimation of the community and to deter third persons from associating or dealing with Dr. Johnson.

43) The Defendant on her Facebook states: "with chiropractors, you can't even get a prescription. So you are going to pay 10 grand for tests and vitamins recommendations. If you need thyroid medication, you still have to see an actual doctor who can write a prescription…" Again, the Defendant refers to Dr. Johnson's practice as solely distributing vitamins which is false.

44) On her Facebook page, the Defendant refers to non-chiropractic doctors as "actual doctors" in essence stating that Dr. Johnson is not an "actual doctor". That statement is false because Dr. Johnson is an "actual doctor." Stating that Dr. Johnson's is not an "actual doctor" has caused severe damage to his reputation.

45) The Defendant's statements have lowered his estimation in the community as a competent Doctor and has deter third persons from associating or dealing with him.

46) In referring to Dr. Johnson's Method, the Defendant says "Sorry, but it's a scam." Dr. Johnson's Method is not a scam; it is a treatment regimen that he has marketed to other chiropractors. Again, the Defendant made this false statement to damage Dr. Johnson's professional reputation and to deter potential patients and third parties from associating or dealing with him.

47) Again in referring to Dr. Johnson's clinical regimen, on her Facebook page, the Defendant says "WHERE ARE THE PEOPLE WHO ARE GETTING BETTER? WHERE ARE THE THOUSANDS OF PATIENTS WHO ARE BETTER AFTER BEING TREATED BY JOHNSON AND HIS NETWORK OF CHIROPRACTORS? Where are the studies that show the results? Pretty straightforward question, wouldn't you agree?"

48) The Defendant's statement has the impact of accusing Dr. Johnson of never seeing positive results from his treatment of his patients using his clinical regimen. This statement is false. Again, the Defendant made this false statement to damage Dr. Johnson's professional reputation and to deter potential patients and third parties from associating or dealing with him.

49) Again in criticizing Dr. Johnson's practice, the Defendant states on her Facebook page: "I know some patients who have had good results doing complementary treatment with chiropractors, but these are legitimate, caring chiropractors…"

50) The Defendant is saying that Dr. Johnson is not a legitimate, caring chiropractor which is completely false as Dr. Johnson is a legitimate caring chiropractor. Again, the Defendant made this false statement to damage Dr. Johnson's professional reputation and to deter potential patients and third parties from associating or dealing with him.

51) In response to another comment on Facebook stating that the Method is "all a crock" and

"one big money making machine", the Defendant states "[n]o, they are not expected to work for free. They are also not expected to take advantage of thyroid patients, which is what they are most definitely doing."

52) This statement has the effect of stating that Dr. Johnson is taking advantage of thyroid Patients which is entirely false. Again, Dr. Johnson does not only treat thyroid patients with his Method but also other chronically ill patients as well.

53) Dr. Johnson is providing a service to his patients that costs money and has shown a significant success rate for those thyroid patients who have not had success with other treatments. Dr. Johnson is in no way forcing patients to partake in his clinical regimen. Patients taking part in the clinical regimen are partaking of their own free will and are told the price of their treatment in advance. Again, the Defendant made this false statement to damage Dr. Johnson's professional reputation and to deter potential patients and third parties from associating or dealing with him.

54) Again the Defendant criticizes Dr. Johnson's practice and Method by stating that "[l]egitimate naturopaths and holistic/integrative physicians do not charge patients $10,000 or more up front for tests and treatment."

55) The Defendant is stating that Dr. Johnson is not a legitimate professional which is entirely false. Again, the Defendant made this false statement to damage Dr. Johnson's professional reputation and to deter potential patients and third parties from associating or dealing with him.

56) The Defendant has commented on Facebook that chiropractors like Dr. Johnson "don't

mention to patients that they can't prescribe medications." The Defendant is stating that Dr. Johnson does not abide by the ethical code to which he has promised allegiance as a chiropractor. This statement is absolutely false.

57) Dr. Johnson discloses to every patient the parameters of what he is legally and ethically able to provide for them.

58) These comments and others by the Defendant constitute libel per se.

59) These false statements have caused Dr. Johnson substantial damage to both his reputation and his practice.

60) Dr. Johnson has suffered damage to his reputation as a chiropractor as potential patients have been deterred from using his services due to the Defendant's false statements.

61) Dr. Johnson has lost all of the business from the Chiropractors who had subscribed to Dr. Johnson's Method.

62) The Plaintiffs damages from lost revenue and profits amount to $1,000,000.00.

63) Dr. Johnson has incurred significant attorney's fees in pursuing this action against Defendant.

64) The Defendant is capable of paying all of the damages due to the Plaintiffs and their attorneys' fees.

## SECOND CLAIM FOR RELIEF

### (Copyright Infringement)

65) Paragraphs 1 through 64 are incorporated herein by reference.

66) As the owner of the copyright to all original information on www.txchronicpain.com, Dr. Johnson has the sole right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;…" 17 USC §106(3).

67) Under 17 USC §501(a) "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be."

68) The Defendant has infringed on Dr. Johnson's copyright each time she published his copyrighted material online.

69) The Defendant has posted links to Dr. Johnson's copyrighted work on several occasions by posting links to it on her Facebook page, thereby transferring ownership of the copyrighted work to third parties without Dr. Johnson's consent.

70) Under 17 USC §504 Dr. Johnson is entitled to the actual damages he suffered due to the Defendant's infringement of his copyright and any profits of the infringer that are attributable to the infringement.

71) Due to the Defendant's violation of Dr. Johnson's copyright, Plaintiffs have lost all clients subscribing to Dr. Johnson's Method and all potential clients who would have subscribed in the future.

72) The Plaintiffs' damages total approximately $1,000,000 in lost revenue.

### REQUEST FOR RELIEF

WHEREFORE in light of the intentionally libelous nature of the Defendant's comments on Facebook and About.com and the Defendant's intentional reproduction of certain portions of Dr. Johnson's copyrighted material, Plaintiffs request that this honorable Court:

1) Find the Defendant, Mary Shomon, to have committed libel per se against Plaintiffs and award them damages to compensate the Plaintiffs for this defamation;

2) Grant the Plaintiffs injunctive relief so as to stop Ms. Shomon from further defaming the Plaintiffs;

3) Find that the Defendant has infringed upon Dr. Johnson's copyright;

4) Award the Plaintiffs $1,000,000 in actual damages;

5) Award the Plaintiffs costs, expenses, and attorney's fees;

6) And any other relief as the Court deems appropriate and just.

Respectfully Submitted

by *[signature]*

Catherine E. Kohn, Bar No. MO63008
7700 Bonhomme Ave, Suite 510
Clayton, MO 63105
314-721-8822,
314-721-6609 (fax)
liza@kohn-partnership.com